IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) ) | CIVIL ACTION NO. 07-1876 (RWR) |
| v. | ) ) | |
| M.P. INDUSTRIAL COATINGS, INC., et al., | ) ) | |
| Defendants | ) | |

### DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1. My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2. The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry whose employees are members of or otherwise represented by the Union and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

EXHIBIT 1

3.     I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.     The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.     My review of the regular business records maintained by the Pension Fund reveals that Defendant, M.P. Industrial Coatings, Inc. a/k/a MP Industrial Coatings, Inc. ("Company") was a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades, AFL-CIO, CLC. Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan.

6.     The collective bargaining agreement requires Company to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7. Company owes contributions for the period January 1, 2002 through March 31, 2006 in the amount of $108,541.39. These amounts were discovered during an audit of Company's books and records for the period January 1, 2002 through March 31, 2006. Company agreed to submit to the audit and pay all amounts found owing, as set forth in paragraph 8 of the June 8, 2006 Settlement Agreement. (Complaint, Exhibit 3, Docket No. 1).

8. Company owes interest through May 31, 2008 in the amount of $23,511.21 on the unpaid pension contributions set forth in ¶7. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

9. Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Company in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through October 31, 2007 is $23,511.21. Twenty percent (20%) of Company's unpaid contributions is $21,708.29. The total amount of interest due is greater than the liquidated damages. Therefore, Company owes liquidated damages in the amount of $23,511.21.

10. Article VI, Section of the Trust Agreement requires the assessment of audit costs for any employer found delinquent or in violation of the Rules and Regulations of the Plan. Therefore, Company owes audit costs in the amount of $787.55.

11. Despite a continuing contractual obligation to do so, Company has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their

190429-1                                          3

behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions <u>and</u> the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Company, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Company's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Company to cover those benefits. Therefore, Company should be required to submit timely current contributions and remittance reports in the future.

12. I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Company and request that this Court consider the same as proof in support of

the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

>Pursuant to 28 U.S.C. §1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: 5/28/08

_____
THOMAS MONTEMORE